COMMONWEALTH of Pennsylvania,
Appellee

v.

Ronald MILBURN, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 5, 2012.

Filed July 12, 2013.

Reargument Denied Sept. 19, 2013.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, ALLEN, and PLATT,* JJ.

OPINION BY BOWES, J.:

Ronald Milburn appeals from the judgment of sentence of five to ten years imprisonment that was imposed after he was convicted *in absentia* by a jury of delivery of a controlled substance and possession of a controlled substance with intent to deliver ("PWID"). We reject his Confrontation Clause challenges and affirm.

Appellant's convictions were based upon the following events. In January 2007, Philadelphia Police Officer James Coolen conducted a drug investigation at 2066 Bridge Street, Philadelphia. On January 18, 2007, Officer Coolen supervised a controlled buy at the noted location using a confidential informant ("CI") to obtain $150 in cocaine. Appellant opened the door to 2066 Bridge Street and briefly spoke with the CI, who then proceeded to a nearby street corner. Appellant entered the residence for about one minute, exited it, and handed the CI packets of cocaine in exchange for the controlled-buy money. On January 23, 2007, Officer Coolen conducted another controlled buy at the same location. The drug purchase was conducted in the identical manner as the one that transpired on January 18, 2007, except that the CI bought $100 worth of cocaine.

* Retired Senior Judge assigned to the Superior Court.

Based on these two controlled buys, Officer Coolen obtained a search warrant for 2066 Bridge Street and executed the warrant on January 26, 2007. Appellant was present and cocaine was found on his person. There were thirty-eight grams of cocaine and about $1,200 in currency located in a bedroom, where police also discovered mail addressed to Appellant and photographs of him. The Commonwealth presented the testimony of Johnson Vargagse, a forensic chemist with the Philadelphia Police Chemistry Lab (the "Lab"). Mr. Vargagse related that chemical testing established that the substances recovered on January 18th and January 23rd from the CI and those located in Appellant's bedroom on January 26th were cocaine.

Appellant was arrested on January 26, 2007, released on bail in March 2007, and absconded. After various listings, Appellant eventually was tried on March 14, 2011 *in absentia*, but the jury deadlocked. On June 30, 2011, a second jury convicted Appellant of one count of delivery of a controlled substance based on the controlled buys and one count of PWID based on the cocaine discovered as a result of the execution of the warrant. Immediately after the jury rendered its verdict, counsel waived the preparation of a presentence report. Appellant had a criminal history that included convictions for burglary and aggravated assault. The court imposed a term of incarceration of five to ten years. Appellant was apprehended shortly after he was sentenced. He filed the present appeal and raises this question on appeal:

> Did not the lower court err by permitting a police chemist to testify to the results of narcotic chemical testing the chemist did not perform or observe based on laboratory reports he did not

write, to introduce these laboratory reports into evidence at appellant's trial both to prove that the alleged narcotics in this case were cocaine, and to permit the same police chemist to use the results and reports as a basis for his expert opinion in the absence of the testimony of chemists who performed the tests and wrote the reports at issue as the test results and reports were testimonial evidence and their introduction through the non-testing chemist violated appellant's constitutional rights to confrontation?

Appellant's brief at 3.

■ Appellant's contentions are that his Confrontation Clause rights were violated when: 1) the reports of non-testifying analysts who conducted part of the testing of the cocaine were admitted into evidence; and 2) Mr. Vargagse was permitted to rely upon those test results in rendering his opinion that the materials involved in this matter were cocaine. The issue of whether a defendant "was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Dyarman*, 33 A.3d 104, 106 (Pa.Super.2011).

The following facts are pertinent to a resolution of Appellant's allegations. As noted, the Commonwealth presented the testimony of Mr. Vargagse, who has a master's degree in chemistry, to establish that the three substances in question were cocaine. He worked for the Lab for ten years, and his duties included conducting analyses of narcotic drugs, including cocaine. Mr. Vargagse rendered a conclusion that the substances were cocaine based upon the results of two separate tests.[1]

---

1. Specifically, the Commonwealth queried of

Mr. Vargagse: "Sir, in order for your office to

Mr. Vargagse stated that ·the chemical analysis in question consists of two steps, the first step is a "current test of the drugs," and the "second step is the confirmation of the drug by instruments." N.T. Trial (Jury), 6/30/11, at 37. Mr. Vargagse described the current test as a color test known as a SCOTT test. The SCOTT test consists of three steps. A portion of the substance being tested is placed in a test tube, a re-agent is added, and the substance must turn blue. If the substance turns blue, hydrochloric acid is added to the step one solution, and, if the substance turns pink, then the third step is conducted. For that final testing phase, chloroform is added. If the substance separates into two layers, the top layer being pink and the bottom layer being blue, that "indicates the presence of cocaine." *Id.* at 42. Mr. Vargagse did not perform the SCOTT test on any of the drugs involved in this case; however, he did personally conduct the second instrument test on each one. That test is known as chromatogra-

phy/mass spectrometry or GC/MS testing. The GC/MS examination confirms the presence and amount of drug in any sample submitted for testing. The person performing the SCOTT test and the GC/MS test thereafter produces a report for each test. As noted, both tests must be positive before Mr. Vargagse will confirm that a substance is cocaine.

The three SCOTT tests were conducted by other analysts, who did not testify at Appellant's trial. Appellant objected to Mr. Vargagse's references to the results of the SCOTT tests performed on the substances in question.[2] Mr. Vargagse personally performed the GC/MS tests on the drugs seized: 1) on January 18, 2007, in a knotted clear plastic bag and recovered by police from the CI; 2) on January 23, 2007, which were found in five blue-tinted packets and taken from the CI; and 3) on January 26, 2007, in forty-three blue-tinted packets and three knotted, clear plastic bags that were seized with the warrant from Appellant's bedroom.[3] Mr. Vargagse

confirm something is a drug, whether it's cocaine, whether it's heroin, ... is one of these tests sufficient, or do both tests have to be done in order to generate a report saying that it's that narcotic?" N.T. Trial (Jury), 6/30/11, at 56. He responded, "We have to do the—both tests in order to confirm as a narcotic—[.]" *Id.* Thereafter, the Commonwealth repeated, "[Y]our lab, the chemistry lab, cannot say something is cocaine unless both tests are done and say that it's cocaine; is that correct?" *Id.* at 57. Mr. Vargagse reaffirmed, "Absolutely right." *Id.*

2. In light of the context, we conclude that Appellant's objection was based upon the Confrontation Clause. We note that under Pa.R.E. 703, Mr. Vargagse was permitted to rely upon the results of the SCOTT test in rendering his opinion, even if the SCOTT test results were not admissible into evidence, so long as SCOTT tests are reasonably relied upon by experts in his field in forming opinions as to whether a substance is cocaine. Specifically, that rule provides:

An expert may base an opinion on facts or data in the case that the expert has been

made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. We note that Appellant did not object to the foundational basis for Mr. Vargagse's opinion under this Rule.

3. Contrary to the Commonwealth's representation in its brief, there was not only one SCOTT test performed. As noted, there were three seizures in question, and all three substances had to be tested. Mr. Vargagse twice stated the he could not opine that each seized substance was cocaine absent a positive result from both the SCOTT and the GC/MS testing. Mr. Vargagse performed the second test on all three substances. At page thirty-eight of the trial transcript, that witness referred to a report from Bridgette Brennan on a test she performed on the material in property receipt 2695399. At page forty-four of the transcript, Mr. Vargagse mentioned a report prepared by Mariamma Shegu as to her analysis on drugs

also personally prepared the reports establishing the results of the GC/MS testing. He opined, based upon the results of the SCOTT test and his own GC/MS testing, that all three samples were cocaine.

Appellant claims that he is entitled to a new trial since: 1) the reports of the SCOTT tests prepared by the three non-testifying witnesses were introduced at trial, and 2) Mr. Vargagse relayed the results of the SCOTT tests at trial when he testified that, to a reasonable degree of scientific certainty, the three substances were cocaine. Appellant maintains that his Confrontation Clause rights were violated in both instances since he was unable to cross-examine the three analysts.

A review of the record reveals that Appellant's first position cannot be sustained because the three SCOTT reports were never introduced into evidence. The trial transcript establishes that Commonwealth Exhibits 27, 28, and 29 were the reports of the SCOTT tests and were prepared by the non-testifying witnesses. N.T. Trial (Jury), 6/30/11, at 38, 44, 48. Commonwealth Exhibits 30, 31, and 32 were the reports prepared by Mr. Vargagse based upon his own GC/MS testing on the three samples. Appellant objected to the introduction of Commonwealth exhibits "C–27, C28, and C–29." *Id.* at 108. His objection was based on the fact that "Mr. Vargagse was not the analyst nor the author of any of those documents[.]" *Id.* at 109. That objection was sustained, and those reports were not allowed into evidence. *See id.* (The Court: "All right. And so other than those things objected to, all of [the Commonwealth's] documents are moved into evidence."). Thus, to the extent that Ap-

pellant suggests that his Confrontation Clause rights were violated by the introduction into evidence of reports prepared by people whom he did not have the opportunity to cross-examine, the record refutes that contention.

■ We now address the remaining portion of Appellant's argument. Appellant contends that his Confrontation Clause rights were violated because Mr. Vargagse relied upon the results of preliminary SCOTT testing conducted by the other analysts as well as his own GC/MS testing in rendering his opinion that the three samples were cocaine. *See* footnote one, *supra.* On appeal, Appellant relies upon *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

Under the Confrontation Clause, a defendant has the right to confront any witnesses against him. Prior to the decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court took the view that "the Confrontation Clause did not bar the admission of out-of-court statements that fell within a firmly rooted exception to the hearsay rule." *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 2223, 183 L.Ed.2d 89 (2012); *see Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, the *Crawford* Court held, "Testimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford, supra* at 59, 124 S.Ct.

---

bearing property receipt 2703808. Finally, at page forty-eight of the transcript, the witness discussed a laboratory report prepared with respect to substances in property receipt 2703827, and that report was prepared by To

Hanjong. Since Mr. Vargagse did the GC/MS testing, the three reports that he mentioned and upon which he relied in forming his opinion, were, by necessary implication, the SCOTT tests.

1354 Since dissemination of the *Crawford* decision, the Supreme Court has handed down a number of decisions that interpret whether a statement is testimonial in nature and thus subject to *Crawford. See Williams, supra* at 2223 (collecting cases).

Pertinent herein are those decisions discussing whether scientific reports that establish an element of the crime in question can be introduced without offending the Confrontation Clause. Those decisions include *Melendez–Diaz, Bullcoming,* and *Williams.* In *Melendez–Diaz,* the defendant was charged with drug trafficking in cocaine after being found in possession of a white powdery substance contained in three bags. The substances were forwarded to a state forensic laboratory for analysis, and, at trial, the court admitted certificates of analysis that were generated from the laboratory and executed under oath before a notary. Those documents certified that the materials discovered in the three bags were "examined with the following results: The substance was found to contain: Cocaine." *Melendez–Diaz, supra* at 308, 129 S.Ct. 2527. The High Court deemed those certificates to be testimonial statements introduced for the truth of the matter asserted therein, and the Court ruled that they were inadmissible unless the persons who created the certificates were presented at trial and subjected to cross-examination.

In the *Bullcoming* case, a driving under the influence of alcohol prosecution was at issue. After the defendant was convicted, he invoked the Confrontation Clause and challenged the prosecution's introduction into evidence of a forensic report by an analyst who had performed the blood testing and certified the defendant's blood alcohol content. In that case, the analyst was not presented as a witness. Rather, the prosecution offered the testimony of a different analyst, who was familiar with the testing procedures of the laboratory in question, but who had neither performed nor observed the actual analysis of the defendant's blood. The Supreme Court found that the Confrontation Clause was not satisfied by the use of this surrogate witness through which a report prepared by another to establish an element of the crime was admitted. The Court held that the Confrontation Clause prohibits the introduction into evidence of a laboratory report containing a certification about the results of a test necessary to establish an element of the crime in question through the in-court testimony of a witness who did not perform or observe the test.

The *Bullcoming* and *Melendez–Diaz* cases were examined in *Commonwealth v. Yohe,* 39 A.3d 381 (Pa.Super.2012), *petition for allowance of appeal granted,* 2012 PA LEXIS 1987, upon which the Commonwealth relies. In *Yohe,* the defendant was convicted of driving under the influence of alcohol. At trial, the Commonwealth presented the testimony of a toxicologist who was also the assistant director of the laboratory that ascertained the defendant's blood alcohol content. The toxicologist testified as to the defendant's BAC at the time of the incident and the report of the outcome of the BAC testing was admitted into evidence. The defendant objected to the testimony since the testifying toxicologist did not perform any aspect of the BAC analysis. The trial court overruled the objection and the defendant was convicted of DUI. However, the defendant subsequently was awarded a new trial based on the Confrontation Clause issue, which was raised in a post-sentence motion.

In the ensuing Commonwealth appeal, we reinstated the conviction of DUI. We noted the following. The toxicologist in question reviewed the report prepared regarding the defendant's BAC by checking

all of the following information: the background information in the report, the name of the individual, the agency requesting the report, the identifying numbers, the external and internal chain of custody, the testing that was performed, and the consistency in the data. The witness noted that his laboratory conducted the BAC testing twice, and he confirmed that both outcomes were in accord. Since all of the reviewed information was correct, the witness executed the report that established the defendant's BAC. Although the toxicologist admitted that he did not personally perform or observe any aspect of the testing in question, we nevertheless concluded that the defendant's Confrontation Clause rights were satisfied. Our conclusion was based upon the fact that the toxicologist personally certified the results of the testing performed by other people and prepared the report setting forth the outcome of the BAC testing for use at trial. Our review of the above case reveals that it is inapposite to the matter at hand. Material to our determination is the fact that the expert witness herein, unlike the one in *Yohe,* was actually involved in the testing process.

We further note that neither *Melendez–Diaz* nor *Bullcoming* is directly applicable since, as noted above, the reports herein prepared by the non-testifying analysts were not introduced into evidence. As noted, Mr. Vargagse was directly involved in a portion of the testing process. He merely relied upon the SCOTT tests performed by the non-testifying analysts. We are aware Mr. Vargagse's testimony conveyed the results of the SCOTT tests since he opined that the substances were cocaine and acknowledged that both the SCOTT tests and his tests had to be positive in

order for him to state the seized materials were cocaine.

We conclude that the United States Supreme Court decision in *Williams, supra,* deals directly with the scenario at issue herein. In *Williams,* a defendant was tried for rape. After the rape, sperm was collected from the victim and was sent to an outside laboratory, Cellmark, for DNA testing. That test revealed a match on DNA testing performed on the defendant's blood in a prior criminal case. The defendant was placed in a line-up and the victim identified him as her rapist. At trial, the prosecution called the analyst who had performed the DNA testing of the defendant's blood in the prior criminal case. The Commonwealth also called an expert witness, who compared the results of the witness who had previously tested defendant's blood with the results of the Cellmark DNA testing of the sperm. That expert witness opined that the DNA of the sperm matched the DNA of the defendant's blood.

The Cellmark laboratory report was not admitted into evidence and was not shown to the factfinder, but the expert witness admitted that she did not conduct the DNA testing of the sperm and had not observed that testing. In the *Williams* decision, a majority of the justices ruled that the Cellmark DNA testing results were hearsay and were prepared for purposes of prosecution. However, five of the justices affirmed the defendant's conviction after finding that the Confrontation Clause was not offended when the testifying expert conveyed to the jury the results of the DNA testing of the sperm performed by Cellmark. Four of the justices, Justice Alito, joined by Chief Justice Roberts, Justice Kennedy, and Justice Breyer (the "plurality"),[4] based their analysis upon two

4. Justice Breyer specifically joined the majority but also opined that application of the

Confrontation Clause to the plethora of crime laboratory reports used in contemporary

independent grounds. *Id.* at 2244. Pertinent herein is their conclusion that the conveyance of the test results from Cellmark by the testifying expert witness was not covered by the Confrontation Clause because her testimony revealing those results did not involve a formal statement such as an affidavit, deposition, prior testimony, or confession of a co-defendant. *Id.* at 2242. Those four justices distinguished *Melendez–Diaz* and *Bullcoming*, noting that those cases did not hold that all forensic reports qualify as testimonial statements. They observed, "Introduction of the reports in those cases ran afoul of the Confrontation Clause because they were the equivalent of affidavits made for the purpose of proving the guilt of a particular criminal defendant at trial." *Id.* at 2243.

Justice Thomas concurred with the plurality "that the disclosure of Cellmark's out-of-court statements through the expert testimony of [the prosecution's expert witness] did not violate the Confrontation Clause." *Id.* at 2255. Additionally, Justice Thomas employed similar reasoning to the plurality. He concluded that the expert witness's trial testimony "lacked the requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the Confrontation Clause." *Id.* Justice Thomas explained that, in his opinion, the Confrontation Clause only "reaches formalized testimonial materials, such as depositions, affidavits and prior testimony, or statements resulting from formalized dialogue such as custodial interrogation." *Id.* at 2260 (citations and quotation marks omitted).

Hence, a majority of the Supreme Court concluded that the conveyance of Cellmark's test results by the testifying expert witness did not violate the Confrontation Clause. They distinguished her testimony from the introduction of formalized reports attesting to or certifying the results of scientific tests to establish an element of the crime in question by a witness uninvolved to any extent in the testing process.

In doing so, they found that the witness's statement importing the test results was not testimonial in nature.

The present case is directly on point with that of *Williams*. Just as the expert witness did in *Williams,* Mr. Vargagse conveyed the results of the SCOTT tests by opining that the substances were cocaine after being involved in the testing process, just as the prosecution presented the testimony of the expert witness who established the defendant's DNA in *Williams*. The type of testimony offered by Mr. Vargagse has been ruled by five Supreme Court justices to fall outside of the parameters of the Confrontation Clause because it is not "testimonial" in nature, as envisioned by *Crawford*. Hence, we affirm the trial court's decision to permit Mr. Vargagse's testimony.

Judgment of sentence affirmed.

prosecutions warrants more study. He continued to adhere to the dissenting views expressed in *Melendez–Diaz,* and *Bullcoming.*