J. A20012/19

2020 PA Super 175

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
                 v.               :
                                         :
JASMIN HAJDAREVIC,             :         No. 21 MDA 2019
                                         :
            Appellant    :


Appeal from the Judgment of Sentence Entered August 29, 2018,
in the Court of Common Pleas of Franklin County
Criminal Division at No. CP-28-CR-0000604-2017


BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.


OPINION BY FORD ELLIOTT, P.J.E.:         **FILED JULY 28, 2020**

Jasmin Hajdarevic appeals from the August 29, 2018 judgment of sentence entered by the Court of Common Pleas of Franklin County following his conviction of driving under the influence ("DUI")—general impairment (blood alcohol concentration ("BAC") .08-.10).[1]  After careful review, we vacate appellant's judgment of sentence and remand for a new trial.

The trial court provided the following factual history:

> The Commonwealth presented Trooper Eric Stuby, a Pennsylvania State Trooper assigned to the patrol unit at the Chambersburg Station.  Trooper Stuby completed standardized field sobriety training as part of his training at the Pennsylvania State Police Academy and has since been involved in numerous [DUI] cases over the past six years.

---

[1] 75 Pa.C.S.A. § 3802(a)(2).

Trooper Stuby was on duty on January 21, 2017. While driving his marked patrol unit down West King Street in Shippensburg, Franklin County, Pennsylvania, Trooper Stuby noticed a passing vehicle fail to deactivate its high beams. Trooper Stuby thereafter initiated a traffic stop of the vehicle at approximately 12:23 a.m. At trial, Trooper Stuby identified [appellant] as the vehicle's sole occupant. During the traffic stop, [appellant] told Trooper Stuby that he was coming from a friend's house where he had consumed several beers. While speaking to [appellant], Trooper Stuby detected "a moderate odor of alcoholic beverage" and observed [appellant's] bloodshot and glossy eyes.

Trooper Stuby then directed [appellant] to exit the vehicle. Because [appellant] stated he had issues with his back, Trooper Stuby directed [appellant] to perform only the Horizontal Gaze Nystagmus component of standardized field sobriety testing. Trooper Stuby subsequently placed [appellant] under arrest and transported him to Chambersburg Hospital for a blood draw.

[Appellant's] blood draw was performed by Fariana Bermejo, a phlebotomist. Trooper Stuby observed Ms. Bermejo draw [appellant's] blood, seal the sample with yellow evidence tape, and transport the sample to [the laboratory]. The sample was then analyzed by Chambersburg Hospital.

The [trial court] next heard the testimony of Theresa Ritchick, a medical laboratory technician at Chambersburg Hospital, a certified laboratory. Ms. Ritchick ha[d] been employed with Chambersburg Hospital for the past four years and estimated that she has performed "probably thousands" of blood tests for blood alcohol content. Ms. Ritchick stated that she tested [appellant's] blood sample on January 21, 2017.

The Commonwealth submitted a report generated using Ms. Ritchick's test results and sent to the Pennsylvania State Police in accordance with

Pennsylvania Department of Health regulations. The report showed that [appellant's] sample was collected by Ms. Bermejo on January 21, 2017, at 12:58 a.m., and later tested by Ms. Ritchick. The report indicated the following test results: a high equivalency value of 0.109, a low equivalency value of 0.089, and a serum value of 0.120. The report also confirmed that the seal on the sample was intact. Ms. Ritchick stated that she was not present when [appellant's] blood was drawn.

On cross-examination, Ms. Ritchick explained that the tubes used to hold the blood sample must be within their expiration date due to the presence of a gel inside the tube which separates the serum from the blood cells. She agreed that expired tubes could compromise the validity of the testing. Upon review of laboratory procedures, Ms. Ritchick testified that the laboratory's procedures require the testing device to be calibrated every thirty days. Ms. Ritchick acknowledged that her documentation stated that calibration had occurred on December 7, 2016, more than thirty days before [appellant's] sample was tested on January 21, 2017. However, Ms. Ritchick also testified that the device itself keeps track of when calibration is required and will block users from running tests when calibration is needed.

Ms. Ritchick was additionally questioned about the quality control samples that are run through the machine every eight hours and the margin of error allowable in determining whether the device's reading is accurate. Ms. Ritchick recognized that expired quality control samples used to test the calibration of the machine could affect the validity of subsequent readings, but stated that nothing indicated the quality control samples used on or about January 21, 2017, were expired.

Trial court opinion, 12/4/18 at 2-4 (citations to the record omitted).

Following a bench trial, the trial court convicted appellant of the aforementioned offense.[2] On August 29, 2018, the trial court sentenced appellant to 6 months' intermediate punishment, which included incarceration for 48 hours and 30 days of electronic and alcohol monitoring. Appellant timely filed post-sentence motions, which the trial court denied on December 4, 2018.

Appellant timely filed a notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court then filed an opinion pursuant to Pa.R.A.P. 1925(a), in which it incorporated by reference the opinion issued when it denied appellant's post-sentence motions.

Appellant raises the following issues for our review:

1. **Confrontation Clause Violation.** Whether [appellant's] right to Confrontation was violated when Theresa Ritchick was allowed to testify as to the time of the blood draw when she did not personally witness said draw[?] More specifically, whether this is a testimonial statement that cannot be entered into evidence via another individuals [sic] representation on a chain of custody document?

2. **Sufficiency of the Evidence.** Assuming this Honorable Court agrees that [appellant's] Confrontation rights were violated, whether there was sufficient evidence to support the conviction, as the Commonwealth did not

---

[2] The trial court acquitted appellant of DUI-general impairment (incapable of safely driving). 75 Pa.C.S.A. § 3802(a)(1).

> > establish that the blood was drawn within two hours of operating the vehicle?
> >
> > 3. **Weight of the Evidence.** Whether the weight of Ms. Ritchick's testimony and documentary evidence was enough to establish a blood alcohol concentration over the legal limit when the results of the blood analysis were introduced into evidence on the basis of her testimony?

Appellant's brief at 5 (emphasis in original).

In his first issue, appellant argues that his right to confrontation was violated because "the time of draw was a testimonial factual statement requiring the testimony of someone who actually witnessed when the blood was drawn[.]" (*Id.* at 19.) Specifically, appellant contends that because the time the blood draw was taken would establish a material factual element of the offense, he had the right to confront Ms. Burmejo, the phlebotomist who performed the blood draw. (*Id.*)

Appellant presents us with a question of law; therefore, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Milburn***, 72 A.3d 617, 618 (Pa.Super. 2013), ***appeal denied***, 87 A.3d 319 (Pa. 2014), quoting ***Commonwealth v. Dyarman***, 33 A.3d 104, 106 (Pa.Super. 2011).

The Sixth Amendment to the United States Constitution provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Specifically, the Supreme Court of the United States held that the Confrontation Clause protects a criminal defendant's right

to confront witnesses bearing testimony against him or her. *Crawford v. Washington*, 541 U.S. 36, 51 (2004).[3]

The *Crawford* Court defined the statements covered by the Confrontation Clause as follows:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to used prosecutorially, extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]

*Crawford*, 541 U.S. at 51-52 (internal citations and quotation marks omitted).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009), the Supreme Court determined that certificates of forensic analysis are within the "core class of testimonial statements" described by the *Crawford* Court. The Court ultimately held that the individuals who performed the forensic analyses were witnesses for the purposes of the Sixth Amendment, and thus the

---

[3] Although appellant's analysis focuses on Sixth Amendment jurisprudence, the Pennsylvania Constitution provides the same protection as the United States Constitution under the Confrontation Clause. *Commonwealth v. Geiger*, 944 A.2d 85, 97 n.6 (Pa.Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009), citing Pa. Const. Article I, § 9; *Maryland v. Craig*, 497 U.S. 836 (1990).

defendant "was entitled 'to be confronted with' [them] at trial." *Id.* at 311, citing *Crawford*, 541 U.S. at 54 (internal quotation marks omitted).

Following the High Court's announcement of *Melendez-Diaz*, this court considered *Commonwealth v. Barton-Martin*, 5 A.3d 363 (Pa.Super. 2010), *appeal denied*, 30 A.3d 486 (Pa. 2011). In *Barton-Martin*, the defendant was convicted of DUI-highest rate, which is a conviction that requires the admission of BAC into evidence. *Id.* at 366, 370. In an effort to meet that evidentiary requirement, the Commonwealth called the custodian of records from Hanover Hospital and introduced the defendant's BAC report as a business record. *Id.* at 368. The Commonwealth did not call the laboratory technician who performed the test on the defendant's blood sample to testify. *Id.* This court held that the admission of appellant's BAC report through the custodian of records' testimony violated the defendant's right to confrontation, absent any evidence that the laboratory technician was unavailable for trial and the defendant had a prior opportunity to conduct cross-examination. *Id.* at 369.

Shortly after *Barton-Martin* was decided, the Supreme Court of the United States announced its decision in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). In *Bullcoming*, the defendant was charged with driving while intoxicated and stood trial. *Id.* at 651. At trial, the prosecution sought to introduce a BAC report reflecting that the defendant's BAC was above the legal limit. *Id.* Instead of calling the analyst who signed the certification of

the BAC report to testify at trial, the prosecution called another analyst from the same laboratory who was familiar with laboratory procedures. *Id.*

The High Court granted **certiorari** to determine whether the Confrontation Clause:

> permit[s] the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.

*Id.* at 657 (citation omitted). Ultimately, the Court disapproved of the type of "surrogate testimony" permitted by the trial court in **Bullcoming** because the surrogate witness could not "convey what the [analyst] performing the test knew or observed about the events [her] certification concerned, *i.e.*, the particular test and testing process [she] employed." **Id.** at 661 (footnote omitted).

Clearly, in this case, the technician, Ms. Ritchick, who performed the test of appellant's blood, did properly testify in line with **Crawford** and its progeny. However, in order to fully address appellant's Confrontation Clause claim, we must first determine whether the **time** of the blood draw constitutes a part of the core class of testimonial statements defined by the **Crawford** Court. Appellant argues that the time of the blood draw is a testimonial factual statement because that information was "offered to establish a different

material factual element of the offense," compared to the results of the BAC report. (Appellant's brief at 19.)

Similar to **Barton-Martin**, appellant was charged in the instant case with an offense that, in order to obtain a conviction, requires the admission of blood alcohol concentration into evidence. **See Barton-Martin**, 5 A.3d at 370. Indeed, Section 3802 of the Motor Vehicles Code provides, in relevant part:

> (2)  An individual may not drive, operate or be in physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% **within two hours** after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(2) (emphasis added).

The plain language of the statute at issue here reveals that the time of the blood draw is an element that must be proven by the Commonwealth beyond a reasonable doubt. Put another way, the time of the blood draw is a testimonial statement pertaining to a fact of a criminal case, in a manner similar to certificates of forensic analysis. **See Melendez-Diaz**, 557 U.S. at 310. Therefore, we find that the time of the blood draw constitutes a part of the core class of testimonial statements defined by the **Crawford** Court.

The Commonwealth, relying on our decision in **Commonwealth v. Shaffer**, 40 A.3d 1250 (Pa.Super. 2012), contends that phlebotomists' involvement in DUI cases is limited to the chain of custody of blood evidence;

therefore, any testimony they may offer does not fall within the confines of the Confrontation Clause. (Commonwealth's brief at 16-17.)

In **Shaffer**, this court held that the Commonwealth's failure to call the phlebotomist who drew the defendant's blood did not violate the defendant's rights under the Confrontation Clause. **Shaffer**, 40 A.3d at 1252. The court noted that **Melendez-Diaz** did not hold, "that anyone whose testimony may be relevant in establishing chain of custody, authenticity of a sample, or accuracy of a testing device must appear in person as part of the prosecution's case." **Id.** at 1252-1253, quoting **Melendez-Diaz**, 557 U.S. at 311 n.1. The **Shaffer** court further noted that the defendant "had ample opportunity to effectively cross-examine [and] confront both witnesses presented against him by the Commonwealth." **Shaffer**, 40 A.3d at 1253.

This case, however, is distinguishable from **Shaffer**. In **Shaffer**, the arresting police officer testified as to the time of the blood draw. **Id.** at 1252. Here, the Commonwealth elicited the following testimony from Trooper Stuby pertaining to appellant's blood draw:

> Q. Now, based on your training and experience, did you determine whether or not you believed [appellant] could operate a motor vehicle safely due to his level of impairment?
>
> A. Yes.
>
> Q. And what did you do as a result of forming that opinion?
>
> A. Placed [appellant] under arrest for driving under the influence.

Q. What was the next step, Trooper?

A. I transported [appellant] to the Chambersburg Hospital for a blood draw.

Q. Did you observe [appellant's] blood being taken?

A. Yes.

Q. Do you know who drew his blood?

A. It was a phlebotomist Fariana --

. . . .

Q. Do you recall what she did with the -- do you recall what she did after drawing the blood?

A. She sealed it with yellow evidence tape.

Q. And then what did she do with the tube then?

A. Transported that back to her lab.

Q. And you witnessed her do all this?

A. I watched her walk back the hallway, yes.

Q. And as a result, that blood was analyzed by the Chambersburg Hospital?

A. Yes, sir.

Q. And you filed charges in this case because the BAC was over .08?

A. Yes, sir.

[The Commonwealth]: I don't think I have any other questions, Your Honor.

Notes of testimony, 7/6/18 at 8-10.

For the purposes of the Confrontation Clause, the only evidence of the time of the blood draw introduced at trial was from Theresa Ritchick, the laboratory technician called by the Commonwealth to testify about the results of appellant's BAC test.  (*Id.* at 28.)   Ms. Ritchick was not present when appellant's blood was drawn.  (*Id.* at 29.)  Put another way, when testifying as to the time of the blood draw, which was noted on the tube containing appellant's blood, Ms. Ritchick is tantamount to a surrogate witness, as she neither performed nor observed appellant's blood draw.   Pursuant to the Supreme Court's holding in ***Bullcoming***, we find that appellant's right to be confronted with the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution was violated in this case.  ***See Bullcoming***, 564 U.S. at 661.   We, therefore, vacate appellant's judgment of sentence and remand for a new trial.[4]   Discussion of appellant's remaining issues is not necessary, as the issues are now moot.

Judgment of sentence vacated.   Case remanded.   Jurisdiction relinquished.

---

[4] We caution that our holding does **not** require phlebotomists to testify as to the time of a blood draw in every DUI case in which blood alcohol concentration evidence is at issue.  As noted ***supra***, the arresting police officer in ***Shaffer*** testified as to the time of the blood draw, thereby preserving the defendant's rights to be confronted by the witnesses against him.  ***See Shaffer***, 40 A.3d at 1252.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/28/2020</u>