2017 PA Super 123

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 403 MDA 2016 |

Appeal from the Judgment of Sentence October 6, 2015
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s): CP-31-CR-0000389-2014

BEFORE: BOWES, OLSON AND STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED APRIL 26, 2017**

Ricky Tejada appeals from the judgment of sentence of twenty-one to forty-two months of incarceration imposed following his conviction for aggravated harassment by prisoner. We affirm the conviction but vacate the judgment of sentence, and remand for further proceedings.

The facts are simple. While housed at the state correctional facility on another matter, Appellant spit in the face of a corrections officer who was attempting to remove Appellant from the law library. On January 23, 2015, shortly before trial was to begin, the parties appeared before the court to address Appellant's attire. The prosecutor informed the judge that Appellant wished to appear in his Department of Corrections jumpsuit instead of a suit. N.T., 1/23/15, at 2. The judge advised Appellant that the choice was his and asked what he wished to do, but Appellant failed to respond to the trial

judge's inquiry. *Id*. Thereafter, Appellant's counsel informed the court that Appellant had instructed him to tell the judge that Appellant simultaneously wished to represent himself and that he was incompetent to proceed to trial. Appellant's counsel stated that he had attempted to speak to Appellant in person upon his appointment, but those efforts were fruitless. *Id*. at 8. Appellant argued with the trial judge, informing him that he had irreconcilable differences with his attorney, and insisted that he did not understand what was happening. When informed the case would proceed to trial, Appellant claimed that counsel was forced upon him and that the court lacked jurisdiction. *Id*. at 14. The judge informed Appellant that if his behavior continued he would be removed from the courtroom. *Id*. at 15.

The trial court then brought in the jury. During opening remarks, Appellant attacked his lawyer.

> THE COURT: . . . . Ladies and gentlemen, you and I are about to embark upon the trial of a criminal case brought by the Commonwealth of Pennsylvania against Ricky Tejada.
>
> Mr. Tejada, I want you to keep your voice down. It's appropriate for you to talk to –
>
> THE COURT: Let the record reflect that the defendant has struck his defense attorney. We are going to take a recess and make some determinations.

*Id*. at 17.  Appellant was thereafter removed from the courtroom.  Counsel then moved for mistrial and asked to withdraw, both of which were granted.[1]  One week later, the judge recused and the matter was reassigned.

At some point, the court ordered that Appellant was not permitted to attend the retrial.  On April 29, 2015, the Commonwealth filed a motion seeking a pre-trial determination of the matter.  "The [c]ourt has since [the mistrial] indicated that [Appellant] is not to be brought, in person, to the Huntingdon County Courthouse."  Motion, 4/29/15, at 1. The court later issued an order scheduling a hearing.

On July 1, 2015, five days before jury selection, that hearing was conducted via videoconference link to the state correctional institute where Appellant was housed.  The transcript of this proceeding is not in the certified record.  The trial court characterized what occurred as follows:

> The [c]ourt held a hearing before the second trial in this matter in order to give Appellant the opportunity to rehabilitate himself and demonstrate his ability to conduct himself appropriately in the courtroom.  At this hearing, Appellant only continued to display a disruptive demeanor and inability to allow court proceedings to continue in his presence.

---

[1]  Following the mistrial, the Commonwealth requested that "[Appellant] only be able to participate by video surveillance" for safety reasons.  N.T. First Jury Trial, 1/23/15, at 19.  The court indicated that it would rule at a later date.

Trial Court Opinion, 4/22/16, at 3. Appellant does not dispute this assessment. "[T]he trial court accurately labeled his behavior at the pre-trial hearing as disruptive[.]" Appellant's brief at 20-21.

As a result of Appellant's behavior at this hearing, the court refused to permit Appellant to physically attend jury selection or trial. However, the court arranged for Appellant's attendance at trial via videoconference. The jury found Appellant guilty and he received the aforementioned sentence. He filed post-sentence motions for relief, which were denied by operation by law. Appellant timely appealed and raises the following issues for our review.

I.    Whether the trial court erred and/or abused its discretion in sentencing Appellant without benefit of Pre-Sentence Investigation?

II.   Whether the trial court erred in conducti[ng] Appellant's Jury Selection, Trial, and Sentencing via video-conferencing?

Appellant's brief at 8.

We first address Appellant's second issue since an erroneous deprivation of the right to be present warrants a new trial. **Commonwealth**

***v. Vega***, 719 A.2d 227 (Pa. 1998) (waiver of right to be present at trial was defective; new trial awarded).[2]

Appellant claims that the trial court violated his constitutional rights by denying a purported right to physically appear in court prior to his retrial.

> [I]t cannot be overlooked that the hearing referenced by the trial court also occurred via video conferencing and Appellant's behavior is easily attributable to the fact that his constitutional rights were being actively violated by his exclusion from the courtroom. The record in this matter certainly reflects the loquacious nature of Appellant and the trial court accurately labeled his behavior at the pre-trial hearing as disruptive, however, Appellant had already been removed from the courtroom and told he would not be permitted to return. **Had the trial court properly conducted a hearing on the issue of Appellant's appearance at trial and allowed Appellant to attend that hearing in person, thereby giving him an opportunity to rehabilitate his disruptive behavior; the outcome may have been different**.

Appellant's brief at 20-21 (emphasis added).

Instantly, Appellant does not claim that the court erred in presumptively barring him from the courtroom due to his attack on counsel that precipitated the mistrial.[3] We do not doubt that the act of attacking

---

[2] We acknowledge the distinction between waiver, forfeiture, and implicit waiver through misconduct. ***See Commonwealth v. Lucarelli***, 971 A.2d 1173 (Pa. 2009).

[3] There is a significant distinction between the forfeiture of the right to be present, which occurred following Appellant's attack upon counsel, and reclamation of that right. Instantly, Appellant's sole claim regarding this matter is that the trial court failed to give him an adequate opportunity to demonstrate his rehabilitation. In other words, the current claim is **not** that

*(Footnote Continued Next Page)*

counsel justified the trial court's finding that Appellant forfeited his right to be present at his retrial. **See Illinois v. Allen**, 397 U.S. 337, 343 (1970) ("We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.").

Instead, Appellant claims that, notwithstanding his removal, he should have been permitted to appear, in person, prior to the retrial in an attempt to convince the judge that he was willing to behave. Appellant suggests that the court was required to do so as a component of due process and the Confrontation Clause of the Sixth Amendment to the United States Constitution. We apply a *de novo* review to both theories. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Smith**, 131 A.3d 467, 472 (Pa. 2015) (citation omitted). "[W]hether a defendant 'was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary.'" **Commonwealth v. Milburn**, 72 A.3d 617, 618 (Pa.Super. 2013)

*(Footnote Continued)* ─────────────────

Appellant was automatically entitled to be present for the retrial due to the first trial ending in a mistrial.

(quoting **Commonwealth v. Dyarman**, 33 A.3d 104, 106 (Pa.Super. 2011)).

We begin by discussing the constitutional right to appear at trial. In **Allen**, **supra**, the United States Supreme Court explained that a basic constitutional right is "the accused's right to be present in the courtroom at every stage of his trial." **Id**. at 338. This right comes from the Confrontation Clause of the Sixth Amendment to the United States Constitution, which states that "In all criminal prosecutions, the accused shall enjoy the right . . . . to be confronted with the witnesses against him[.]" U.S. Const.Amend. VI.

In **Allen**, the trial judge had removed William Allen from the courtroom due to his behavior. The Court of Appeals for the Seventh Circuit held that the Confrontation Clause granted an absolute right to be physically present, and granted him a new trial. That court opined that a trial judge could deal with unruly defendants through restraints, up to and including shackles and a gag. **Id**. at 342. The Supreme Court reversed, finding that the Sixth Amendment right is not absolute.

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Id*. at 343. The Court identified removal from the courtroom as one mechanism to maintain decorum.[4] However, the Court further stated that there is a limitation upon that power: "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id*. at 343. *Allen* did not explain what form those reclamation procedures must take. Building off this statement in *Allen*, Appellant assumes that, since he has a constitutional right to be present for his trial, it follows that he has the right to physically appear to regain the right once lost, either as a component of the Confrontation Clause right or as part of due process. We disagree on both counts.

First, we do not find that the Confrontation Clause right extends to this situation. That right's "functional purpose [is] in ensuring a defendant an opportunity for cross-examination." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). However, there was no cross-examination to be achieved at the hearing to regain the forfeited right. Furthermore, the purpose of the right is to confront witnesses **against** the accused; it does not confer any right to present one's own testimony. That right is rooted in other constitutional provisions. *See Rock v. Arkansas*, 483 U.S. 44 (1987) (right

---

[4] The Court also identified contempt in addition to shackles and a gag, expressing great disapproval for the latter.

to offer own testimony is a component of due process, Compulsory Process Clause of the Sixth Amendment, and the Sixth Amendment right to jury trial). Hence, to the extent **Allen** requires the physical presence of a defendant in the courtroom as a component of the Confrontation Clause, the case is inapposite.

Next, we examine whether Appellant had a due process right to be physically present for this hearing. The following principles govern our review.

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." **Snyder v. Massachusetts**, 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," **id.,** at 106–107, 54 S.Ct., at 332, due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," **id.,** at 108, 54 S.Ct., at 333. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

**Kentucky v. Stincer**, 482 U.S. 730, 745 (1987).

We will assume *arguendo* that the trial court was required to afford the accused an opportunity to demonstrate sufficient rehabilitation following the

mistrial and subsequent relisting.[5]   However, we do not hold that due process mandates physical presence as an element of that hearing. *Stincer*, *supra* held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  *Id*. at 745. Herein, Appellant was present, albeit not physically.  Thus, we can modify the inquiry by asking whether Appellant's physical presence would have contributed to the fairness of the hearing.

_____

[5]  Our research has not uncovered a case presenting the scenario herein, where conduct of the accused simultaneously leads to the grant of a mistrial and an ongoing forfeiture of the right to be present as applied to the retrial. Unsurprisingly, the fact patterns in these cases generally involve the trial proceeding to its conclusion following removal of the defendant.  *See Commonwealth v. Thomas*, 879 A.2d 246 (Pa.Super. 2005) (trial proceeded after defendant removed from courtroom); *Commonwealth v. Henderson*, 418 A.2d 757 (Pa.Super. 1980) (same); *Commonwealth v. Howard*, 471 A.2d 1239 (Pa.Super. 1984) (defendant removed during jury selection, permitted to return); *Commonwealth v. Basemore*, 582 A.2d 861 (Pa. 1990) (defendant removed from courtroom during trial, returned to hear closing arguments after agreeing to conduct himself properly).

Nor do cases from this Commonwealth discuss what opportunities must be afforded a defendant seeking reentry to the courtroom.  Presumably, the five month gap from mistrial to retrial had some ameliorative effect on the behavior.  We note that the American Bar Association Standards for Criminal Justice simply suggest that "there be a standing opportunity for the defendant to return to the courtroom . . . the defendant periodically should be offered an opportunity to return to the courtroom, conditional upon good behavior."  ABA Standards for Criminal Justice 6-3.8.

We see no reason to believe that Appellant's physical presence would have made any difference to the reliability of the judge's conclusion that Appellant was not rehabilitated. In **Stincer**, the question presented was whether the trial court erred in holding an in-chambers hearing to determine the competency of two child witnesses to testify. This hearing was held after the jury was sworn and in the presence of the accused's attorney, but not the accused himself. *Id*. at 732-33. The court ruled that the girls were competent to testify. **Stincer** rejected a due process claim because Stincer "g[ave] no indication that his presence at the competency hearing in this case would have been useful in ensuring a more reliable determination[.]" *Id*. at 747.

We find that the same is true here, as Appellant's only argument to the contrary is based on pure conjecture. "Had Appellant appeared in-person and engaged in disruptive behavior, the trial court's decision would be justified. Appellant was not afforded that opportunity and the trial court's decision to permanently exclude him was an error." Appellant's brief at 22. We cannot see why Appellant's physical presence would make the trial court's determination of whether Appellant reclaimed his right to be present at trial any more reliable. In sum, if Appellant could not behave at the videoconference hearing, there is little reason to think his behavior would have been any different in person.

Since we have concluded Appellant did not have a constitutional right to be present for the challenged hearing, the question is whether the trial court's employment of videoconferencing technology for that hearing was appropriate. Pennsylvania Rule of Criminal Procedure 119, "Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings," states, in pertinent part:

> (A) The court or issuing authority may use two-way simultaneous audio-visual communication at any criminal proceeding except:
>
>> (1) preliminary hearings;
>>
>> (2) proceedings pursuant to Rule 569(A)(2)(b);
>>
>> (3) proceedings pursuant to Rules 595 and 597;
>>
>> (4) trials;
>>
>> (5) sentencing hearings;
>>
>> (6) parole, probation, and intermediate punishment revocation hearings; and
>>
>> (7) any proceeding in which the defendant has a constitutional or statutory right to be physically present.

Pa.R.Crim.P. 119. We do not find that the catch-all of paragraph seven applies, for the foregoing reasons. Hence, the Rule squarely authorized the instant proceeding and the court committed no error.

In reaching this conclusion, we note that ***Allen*** has been interpreted to permit the drastic sanction of the forfeiture of the right to counsel based

upon serious misconduct. "[E]ven absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct." *Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001) (holding, in federal habeas action, that state court did not unreasonably apply federal law in concluding the defendant forfeited his right to counsel based on one attack). Violence is the type of misconduct that has been held to justify the forfeiture of counsel. *See Commonwealth v. Staton*, 120 A.3d 277, 286 (Pa. 2015) (physical assault of counsel in presence of court establishes forfeiture of right to counsel for purposes of PCRA proceeding); *Minnesota v. Lehman*, 749 N.W.2d 76, 81-82 (Minn.Ct.App. 2008) (collecting cases and upholding forfeiture where defendant attacked and beat counsel).

We are, of course, not presented with that sanction. However, the original trial judge granted a mistrial, which was caused by Appellant's own conduct, and this judge thereafter gave Appellant an opportunity to demonstrate his willingness to behave. We find that procedure struck a more than adequate balance of Appellant's constitutional rights against the obvious threat of violence, especially when the court permitted Appellant to participate in his trial via videoconference despite the poor behavior. Indeed, the court's solution was calibrated to avoid the draconian step of total forfeiture of his right to be present, and complied with *Allen's* directive

that an accused be given an opportunity to reclaim his right. Accordingly, we find no error.

We now address Appellant's sentencing claim. Appellant avers that he is entitled to a new sentencing hearing because the trial court sentenced him without the benefit of a pre-sentence investigation ("PSI") report. We agree.[6]

This claim implicates the discretionary aspects of the sentence. *See Commonwealth v. Finnecy*, 135 A.3d 1028 (Pa.Super. 2016). Therefore, this challenge is not automatically reviewable as of right. *Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa.Super. 2013). Before we review such a claim on the merits, we engage in a four part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . .

*Id*. (citation omitted). We decide the substantive merit of the claims only if each requirement is satisfied. *Id*.

---

[6] Appellant also asserts that the trial court violated his constitutional right to be present for sentencing. Since we have concluded that Appellant is entitled to re-sentencing on an alternative basis, we do not need to address this argument.

This appeal was timely filed and includes a separate statement of reasons as required by Pa.R.A.P. 2119(f). Additionally, Appellant specifically objected to the lack of a PSI report at the sentencing hearing, preserving the issue for our review. Finally, Appellant alleges that the court did not state adequate reasons for dispensing with the report. This claim presents a substantial question. **Commonwealth v. Kelly**, 33 A.3d 638, 640 (Pa.Super. 2011).

We now review the merits of the claim. Pursuant to Pa.R.Crim.P. 702(A)(2)(a), a judge is required to explain the reasons for dispensing with a PSI report when, as here, incarceration for one year or more is a possible sentence. Hence, the sentencing judge was obligated to explain why he did not order a PSI report.

In **Commonwealth v. Flowers**, 950 A.2d 330 (Pa.Super. 2008), we held that Rule 702(A)(2) does not require a court to specifically document the reasons for dispensing with a report. Instead, the court has some latitude in fulfilling that requirement, since the ultimate goal of a PSI report is to ensure that the court is "apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." **Commonwealth v. Goggins**, 748 A.2d 721, 728 (Pa.Super. 2000) (*en banc*) (citation omitted). Thus, a court may sentence without the benefit of a PSI report if it possesses the necessary information from another source. **Id**.

In **Flowers**, **supra**, we stated that the harmless error doctrine might apply "[if] the court elicited sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed sentencing decision." **Id**. at 333. The trial court requests that we affirm the judgment of sentence on this basis. Trial Court Opinion, 4/22/16, at 4 (citing **Flowers**).

However, we cannot accept this conclusory statement. Following Appellant's objection to the lack of a PSI report, the court immediately imposed sentence with no further discussion or input from the parties. Hence, we cannot credit the court's conclusion that personal knowledge sufficed, since the record fails to reveal the extent of that knowledge. **Id**. at 333, n.2 (listing factors that must be addressed in a PSI report). **See Commonwealth v. Monahan**, 860 A.2d 180 (Pa.Super. 2004) ("[W]hile it is possible that the trial judge already knew [the defendant] from prior contact, nothing in the record reveals to us the nature, quality, or extent of that knowledge."). Moreover, the sentencing transcript indicates that a PSI report was ordered but it was not completed for unknown reasons, implicitly suggesting that a report would be helpful. Order, 7/24/15, at 1 (directing Huntingdon County Probation Department to prepare a PSI report).

Therefore, we vacate the judgment of sentence and remand for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2017