J-S21009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN MICHAEL FRY | : | |
| | : | |
| Appellant | : | No. 908 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 10, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002629-2021

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:         **FILED: JULY 31, 2023**

Steven Michael Fry appeals from the judgment of sentence of twelve to twenty-four months of incarceration following his convictions for simple assault and harassment. We affirm.

We glean the following factual background from the trial transcript. In the early evening hours of September 15, 2021, Teresa Wolf ("Ms. Wolf") was riding in a car driven by Appellant, who was then her fiancé. During the drive, the couple began arguing about their relationship. Appellant subsequently started punching Ms. Wolf in her face and head with a closed fist, striking her eye, nose, and the left side of her head approximately fifteen to twenty times. Shortly thereafter, Appellant slammed on the brakes, which caused the car to stop functioning. Bystander Yesenia Martinez allowed the couple to push the

_____

[*] Retired Senior Judge assigned to the Superior Court.

vehicle into her driveway. Ms. Martinez and Appellant unsuccessfully attempted to jump start the car while Ms. Wolf remained seated inside the vehicle. Ms. Martinez did not notice any injuries to Ms. Wolf, nor did she observe her in distress. Ms. Wolf did not inform Ms. Martinez that she had been struck by Appellant.

Appellant and Ms. Wolf subsequently walked through the rain to a nearby church. Shortly thereafter, a trooper with the Pennsylvania State Police ("PSP") arrived at the church and began speaking with the couple. The trooper generally inquired as to whether they were okay. Ms. Wolf did not disclose the assault to the trooper and testified at trial that she was not sure why, though she noted that Appellant was next to her during the whole encounter. The trooper left about five minutes later, and Appellant and Ms. Wolf then met Samuel Burkholder, one of the church's pastors. Mr. Burkholder drove them to the borough of Carlisle. He testified that during the drive, he did not observe any injuries to Ms. Wolf, and that she did not appear to be in pain and never indicated there was any altercation with Appellant. Upon being dropped off in Carlisle that evening, Appellant and Ms. Wolf parted ways.

Ms. Wolf woke up the next morning with bruising on her face and went to the hospital. PSP Trooper Wesley Smith met with her in the emergency room. He observed that she had a bruised eye and arm, as well as red marks all over her head. Trooper Smith photographed the injuries.

The trooper then interviewed Appellant the same day. Appellant conceded to the trooper that he was driving with Ms. Wolf the day before and

had gotten into a verbal confrontation with her. However, Appellant denied causing her injuries. During the interview, Trooper Smith noticed that Appellant's hand was "really red" and "borderline bruising." N.T. Trial, 3/31/22, at 42. When asked about that, Appellant stated, "it was unrelated to what happened the night prior." *Id*. The trooper did not photograph Appellant's knuckles.

Based on the foregoing, Appellant was charged with simple assault and harassment and proceeded to a jury trial.[1] At trial, the Commonwealth introduced four photographs of Ms. Wolf's injuries taken at the hospital the morning after the incident. During the defense's case, counsel for Appellant decided to recall Ms. Wolf as a witness. Immediately beforehand, counsel requested permission from the trial court to ask Ms. Wolf about her involuntary mental health commitment to UPMC - Carlisle on September 30, 2021, approximately two weeks after the assault. Following a discussion on the record at sidebar, the court denied the request. However, the court permitted counsel to ask whether Ms. Wolf caused the injuries in question to herself. When questioned, she denied that her wounds were self-inflicted.

Appellant was convicted and sentenced as indicated hereinabove. This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P.

---

[1] Since the count for harassment was graded as a summary offense, the trial court acted as finder of fact with regard to that charge.

1925.[2] Appellant raises the following issue on appeal: "Whether the trial court erred in not allowing defense counsel to question [Ms. Wolf] regarding her involuntary commitment under Pennsylvania Mental Health Procedure Act of 1976, section 302?" Appellant's brief at 5 (unnecessary capitalization omitted).

Although Appellant raises a single issue on appeal, he attacks the trial court's decision on two distinct grounds. First, he argues that evidence of Ms. Wolf's involuntary commitment was both relevant and probative under the rules of evidence, and therefore was admissible at trial. Second, Appellant summarily asserts that the trial court's decision runs afoul of his right to present a complete defense under the Sixth and Fourteenth Amendments of the United States Constitution.

---

[2] Appellant filed a *pro se* "Petition to Remand/Dismiss Counsel (and) Appointment of New Counsel" to this Court on March 9, 2023, seeking to change appointed counsel because an appellate brief had not been filed and due to an alleged breakdown in attorney-client communication. We remanded the matter to the trial court to determine whether counsel had abandoned Appellant and whether any further action was required to protect Appellant's right to appeal, but vacated our order when counsel filed a brief. The trial court nonetheless responded to our remand order, finding that counsel did not abandon Appellant. To the extent the court's response did not address the remaining complaints concerning the quality of attorney-client communication, we observe that the court previously disposed of materially similar averments following a hearing, in which Appellant participated, on a prior remand. Moreover, if Appellant is seeking to challenge current counsel's effectiveness, such a claim must be raised on collateral review. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (holding that claims of ineffective assistance of counsel are to be deferred to post-conviction review, barring circumstances not applicable here).

The appropriate standards of review for these issues are as follows:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020) (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa.Super. 2018) (citation omitted).

Additionally, "[w]hether a defendant was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017) (citation omitted). In the same vein, "[a] question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *Id*. (cleaned up).

We now turn to Appellant's argument that he should have been permitted to question Ms. Wolf concerning her involuntary commitment because the evidence was both relevant and probative. This Court has offered the following summary of the pertinent legal principles:

>Relevance is the threshold for admissibility of evidence; evidence that is not relevant is not admissible. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Our Rules of Evidence provide the test for relevance: evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Further, the court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*Commonwealth v. Leap*, 222 A.3d 386, 390 (Pa.Super. 2019) (cleaned up).

Appellant asserts that sections 301 and 302 of the Pennsylvania Mental Health Procedures Act ("MHPA") require the committed person to have exhibited conduct that poses a danger to either themselves or another within the thirty days leading up to the commitment.[3] *See* Appellant's brief at 12.

---

[3] Relevant herein, § 302 of the MHPA provides that an involuntary emergency examination of a person may occur upon a physician's certification. *See* 50 P.S. § 7302(b). If the examining physician determines "that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately" and may continue for up to 120 hours. 50 P.S. § 7302(b), (d).

Section 301 of the MHPA further provides that a person is "severely mentally disabled" when mental illness causes the person's "capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself[.]" 50 P.S. § 7301(a). "Clear and present danger to others" is shown by establishing that, within the past thirty days, the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated." *See* 50 P.S. § 7301(b)(1). One way "clear and present danger to" one's self can be shown is by establishing that, within the past thirty days, the person attempted suicide or substantially mutilated themselves. *See* 50 P.S. § 301(b)(2).

Appellant contends that if Ms. Wolf's commitment on September 30, 2021, was due to self-inflicted harm, it "would shed light on whether she herself, and not [Appellant], inflicted the injuries found on September 16, 2021." *Id*. Appellant further asserts that the involuntary commitment was relevant to the charges because neither Mr. Burkholder nor Ms. Martinez observed injuries to Ms. Wolf on the day in question, which bolsters the defense that she inflicted the injuries to herself sometime after she parted ways with Appellant in the evening of September 15, but before she arrived at the hospital the following morning. *Id*. at 14-15.

The trial court denied Appellant's request to introduce this evidence because it found that he had not demonstrated its relevance. More particularly, the court stated that at the time Appellant asked to question Ms. Wolf concerning the involuntary commitment, Appellant did not know whether the commitment stemmed from her causing harm to herself or to others. *See* Trial Court Opinion, 9/1/22, at 7. The court noted that Appellant's information came solely from an affidavit of probable cause attached to a criminal complaint accusing Ms. Wolf of assaulting two UPMC emergency room security guards after she had been committed. *See id*. In relevant portion, the affidavit stated:

> On 09/30/21 at 1023 hours, Pennsylvania State Police Troopers were dispatched to UPMC – Carlisle . . . for a report of a fight involving a patient. . . . The incident occurred within emergency Room (ER) Room 16 and within the hallway.
>
>        . . . .

> At approximately 1021 hours, the patient, [Ms.] Wolf, was here from a 302 commitment. [She], while in Room 16, had nurses go in for vitals readings. [Ms. Wolf] was not allowing this to occur so [the security guards] entered the room. [She] became combative, swinging her fists in the air towards both [of the security guards] in attempts to strike them.

N.T. Trial, 3/31/22, at 68 (Defense Exhibit 1 at 4) (cleaned up). The trial court concluded that from this sole reference to the commitment, Appellant offered no basis to support relevance because he had no information as to whether the commitment was due to Ms. Wolf "being a danger to herself versus a danger to others." Trial Court Opinion, 9/1/22, at 8.

Upon our review of the record, we discern no abuse of discretion or error of law in the court's ruling. At trial, Appellant failed to produce any documents or other evidence addressing the involuntary commitment in any capacity other than the affidavit of probable cause for Ms. Wolf's unrelated simple assault charge. He did not demonstrate that she was committed for causing injuries to herself, nor did he show that the commitment had anything to do with the events surrounding Appellant's assault. Indeed, counsel admitted at trial that he knew no facts pertaining to the involuntary commitment other than what was contained in the affidavit of probable cause. *See* N.T. Trial, 3/31/22, at 67. The affidavit described events that occurred **after** the commitment, which at most indicates that her actions constituted a threat to others, not herself. In short, Appellant failed to properly lay a foundation as to the relevance of the involuntary commitment. The trial court therefore acted within its discretion in finding that this evidence was not relevant.

Appellant next argues that the inability to question Ms. Wolf about her commitment deprived him of his right to present a complete defense under the Confrontation Clause of the Sixth Amendment of the United States Constitution, as well as the Due Process Clause of the Fourteenth Amendment. **See** Appellant's brief at 15-16. Appellant notes that a defendant has "a fundamental right to present evidence[,] provided that the evidence is relevant and not subject to exclusion under one of the established evidentiary rules." **Id**. at 15 (citing **Commonwealth v. McGrowan**, 635 A.2d 113, 115 (Pa. 1993)). He contends that this includes evidence that someone else caused Ms. Wolf's injuries, *i.e.*, a third-party guilt defense. **Id**. He avers that this type of defense "possesses a constitutional component under the Six[th] and Fourteenth Amendments of the United States Constitution, as an accused has a right to present a complete defense." **Id**. (citing **Holmes v. South Carolina**, 547 U.S. 319 (2016)). Despite citing both Pennsylvania and federal case law, Appellant neglects to offer any discussion of how this law applies to the facts of his case.

This Court has stated that "[t]he Confrontation Clause in the Sixth Amendment to the United States Constitution applies to both federal and state prosecutions and provides that, in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" **Commonwealth v. Yohe**, 39 A.3d 381, 384 (Pa.Super. 2012) (cleaned up). The right is a procedural one intended to ensure the reliability of evidence through cross-examination. **Id**. at 385. Further, we have declared that:

> Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might wish. Thus, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination.

*Commonwealth v. Segarra*, 228 A.3d 943, 956-57 (Pa.Super. 2020) (cleaned up).

Regarding the Due Process Clause of the Fourteenth Amendment, the United States Supreme Court has noted that the fundamental fairness afforded thereunder includes "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Notably, "[o]nly when an evidentiary rule or ruling completely infringes upon a defendant's ability to present evidence are the Sixth or Fourteenth Amendments implicated." *Commonwealth v. Murray*, 83 A.3d 137, 160 (Pa. 2013) (citing *Crane*, *supra*). State and federal lawmakers do, however, "have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes*, *supra* at 324. This latitude is abridged when the evidentiary rule under consideration "infringe[s] upon a weighty interest of the accused and . . . [is] arbitrary or disproportionate to the purposes [it is] designed to serve. *Id*. (cleaned up).

With his scant argument and mere citation to authority, Appellant has failed to convince us that the trial court's decision to preclude testimony about Ms. Wolf's involuntary commitment violated his right to present a complete

defense. Initially, as discussed above, the trial court did not abuse its discretion in finding that the proposed evidence was not relevant. Appellant cites no authority for the proposition that the Pennsylvania Rules of Evidence concerning relevancy, as applied to this matter, are "arbitrary or disproportionate" to the purposes they are designed to serve. *Holmes*, *supra* at 324.

Furthermore, while the trial court did not permit testimony concerning the involuntary commitment, it did allow counsel to ask Ms. Wolf whether she caused the injuries to herself. Counsel did so, and the following exchange took place:

> Q: Ms. Wolf, I think the last question that I had for was, you had the opportunity to cause your own injuries, didn't you?
>
> A: I wouldn't have.
>
> . . . .
>
> Q: Ms. Wolf, before you went to the hospital on the 16th and after you had spent time with [Appellant], you caused your own injuries, didn't you?
>
> A: No.

N.T. Trial, 3/31/22, at 73-74.

Appellant offers no developed argument that the trial court's ruling "completely infringe[d] upon [his] ability to present evidence," thereby implicating the Sixth and Fourteenth Amendments. *Murray*, *supra* at 160. Appellant was permitted to question Ms. Wolf about whether she harmed herself instead of being injured by Appellant. As such, Appellant was afforded

- 11 -

both the right to confront her concerning his charges and the opportunity to present a complete defense.

Since none of Appellant's arguments convinces us that the trial court improperly denied him the right to question Ms. Wolf about her involuntary commitment, we have no cause to disturb Appellant's conviction or sentence.

Judgment of sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/31/2023