J-S36011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK WALKER | : | |
| | : | |
| Appellant | : | No. 788 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006112-2019,
CP-51-CR-0006113-2019, CP-51-CR-0006114-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK WALKER | : | |
| | : | |
| Appellant | : | No. 789 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006112-2019,
CP-51-CR-0006113-2019, CP-51-CR-0006114-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK WALKER | : | |
| | : | |
| Appellant | : | No. 790 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006112-2019,

CP-51-CR-0006113-2019, CP-51-CR-0006114-2019

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 30, 2023**

Derrick Walker appeals the aggregate judgments of sentence of twenty-eight to fifty-six years of imprisonment following his convictions for multiple counts of rape and related sexual offenses.  We affirm.

The trial court summarized the evidence sustaining Appellant's convictions as follows:

> [At] docket CP-51-CR-0006112-2019, the trial evidence established that on January 20, 2011, at approximately 12:00 a.m., Patricia Croy, who had been a small and thinly framed adult female, had walked from her nearby home to the 7-Eleven convenience store at 5259 Oxford Avenue in Philadelphia.  She remembered standing outside of the store when she saw a large black male approach her.  She testified that Appellant flashed what appeared to be cash and stated, "you know what to do for this."  Feeling fearful, the complainant walked in the same direction as Appellant around to the rear of the 7-Eleven.  Once isolated and out of sight of anyone, Appellant grabbed her, pulled her into an alley and demanded that she drop to her knees.  When the complainant cried out "no," Appellant pushed her to the ground and punched her in the face.  He exposed his penis and tried to force his penis into her mouth.
>
> When Ms. Croy would not perform oral sex on him, Appellant hauled her up by her shirt and slammed her body onto the hood of a car that had been parked in the alley.  Appellant then pulled her pants down from behind and forced his penis into her vagina; he also attempted to place his penis in her anus.  After Appellant finished, the complainant pulled up her pants and walked unsteadily to the front of the 7-Eleven.  Appellant walked there as well and told the complainant to wait while he went inside the 7-Eleven.  Appellant told her that he would get some money for her, but she told him that she was not a prostitute and did not want

his money. As Appellant walked into the store, she ran to her nearby home dazed and confused.

When she got home, Ms. Croy took off her clothes, put on a robe and sat on the floor crying for hours. She testified that at some point she screamed[,] which had awakened her husband. Her husband called the police, and she was taken to Episcopal Hospital where she was treated, and a sexual assault examination was performed. . . .

[In case number] CP-51-CR-0006113-2019, the trial evidence established that on December 2, 2014, at approximately 12:30 p.m., the complainant, Tiffany Anderson, walked over to a donut shop at 7th Street and Girard Avenue, in Philadelphia, after attending her methadone treatment program. Appellant stood outside of the shop and initiated a conversation with her about headphones he had claimed to be selling. Ms. Anderson agreed to look at the headphones, and they began to walk up Girard Avenue. Appellant, a large framed black male[,] put his arm entirely around her shoulder. This did not alarm the complainant because of her past experiences of making . . . drug transactions[,] when other persons would place their arm around the buyer's shoulder to give the appearance of familiarity to any onlooker.

The complainant testified that as Appellant placed his arm around her shoulder, however, Appellant poked a knife at the base of her neck and directed her to keep walking and not to do anything to make her "noticeable." He grabbed her belongings, including her iPhone and told her that he would only give it back if she did what he said. At knifepoint, Appellant led her into an alleyway isolated behind the Dunkin Donuts at 10th Street and Girard Avenue and pushed her onto the ground and made her perform oral sex upon his penis.

Ms. Anderson recalled that Appellant had grabbed her face, forced her to turn around so that she was still kneeling with her face pressed against a metal fence, and pulled down her pants and vaginally raped her. When he was done, he told her to leave and he did not return her iPhone. The complainant got up shaken and dazed and left the alleyway. She ran to a store a few blocks away and called her boyfriend and the police. The complainant was taken to Episcopal Hospital, Special Victims Unit where she

- 3 -

received medical treatment and a sexual assault examination (rape kit)[.] . . .

. . . .

[At] docket CP-51-CR-0006114-2019, trial evidence established that on January 12, 2015, at approximately 11:30 a.m., the complainant, Battia Harden, who had just moved to Philadelphia with her boyfriend and infant daughter, was walking around 55th and Thompson Streets, trying to get a sense of what was around the neighborhood. She recalled asking a woman on the street where she could buy "loosies" (loose cigarettes). She followed that woman's directions as best she could remember but surmised that she made a wrong turn when she encountered a large framed black male later identified as Appellant.

When Ms. Harden asked Appellant if he knew where to get "loosies," he replied that he had sold loose cigarettes but that he did not have any more on him. He told her that he had more at his home nearby and that she should follow him. The complainant walked with Appellant to a nearby house. He directed her to an isolated area to the rear of the property. There she handed him some money. As Appellant entered the house, the complainant waited outside with her back facing the property. She made a cell phone call and when the call ended, she felt someone from behind her put a hand over her mouth and "trip her forward" onto the ground and on her stomach. She had jeans on and could feel the large man trying to pull them down with one hand while still covering her mouth.

Ms. Harden testified that the male had not been able to pull her pants down with one hand as she struggled; he removed the hand from her mouth, and she started screaming. He then struck her back with a tire iron that she had been able to see out [of] the corner of her eye. Her pants came down and he forcibly inserted his penis in her vagina. She was not sure if he had ejaculated.

During the attack, Ms. Harden had begged him to stop and to get off her, but Appellant refused. When he finished, Appellant ran away. Ms. Harden laid on the cold[,] hard ground crying and scared. She then got up and called the police as soon as she got home. The police came to her house and she directed the officers to the attack location. There, the police officers recovered the tire iron and transported Ms. Harden to the Special Victims Unit where

- 4 -

she received medical treatment and a sexual assault examination. . . .

Trial Court Opinion, 10/24/22, at 2-6 (cleaned up).

On December 12, 2018, the DNA from all three assaults was determined to match. Six months later, Appellant's DNA was connected to the three cases through the Combined DNA Index System ("CODIS"). Appellant was arrested on July 6, 2019. Retests of the DNA recovered from the complainants with a sample from Appellant confirmed that he was the source of the DNA recovered during the sexual assault examinations.

Prior to trial, the court granted the Commonwealth's motion to consolidate the three subject cases, over Appellant's objection. Further, the court denied a motion *in limine* filed by Appellant demanding that the nurses who prepared examination reports concerning Ms. Harden and Ms. Anderson testify at trial. Instead, the Commonwealth introduced those two documents through Allison Denman, a sexual assault nurse examiner and the Clinical Director of the Philadelphia Sexual Assault Response Center. The reports included a single-page chain of custody form completed by the nurses, and the remainder generally concerned the victims' responses to standard questions, medical background, and notes of testing performed for sexually transmitted diseases. *See* Commonwealth's Exhibits C-7, C-16.

Appellant's defense at the consolidated jury trial was that each of the victims was engaging in prostitution at the time of the offense and, therefore, they consented to the sexual encounters. At its conclusion, the jury convicted

Appellant of numerous crimes.[1]  He was subsequently sentenced as indicated hereinabove.  Appellant filed timely notices of appeal at each implicated docket, and we consolidated the matters *sua sponte*.

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following two issues on appeal:

I.  Did not the trial court err and abuse its discretion by consolidating three unrelated cases into a single trial, where the cases did not satisfy any exception to the bar on "other crimes" evidence, and consolidation tainted the jury with prohibited propensity evidence?

II.  In admitting forensic laboratory reports through the testimony of a surrogate instead of the forensic nurses who prepared the reports, did not the trial court violate the Confrontation Clause and the Pennsylvania Supreme Court rules prohibiting that hearsay evidence?

Appellant's brief at 3 (cleaned up).

Appellant's first issue is that the trial court erred in granting the Commonwealth's motion to join the three separate cases into one consolidated trial.  As to this issue, this Court has iterated that "[i]n reviewing a trial court decision to consolidate . . . offenses for trial, our standard is abuse of discretion." ***Commonwealth v. Kunkle***, 79 A.3d 1173, 1190 (Pa.Super. 2013) (citation omitted).

---

[1] Specifically, at CP-51-CR-0006112-2019 (Ms. Croy), Appellant was convicted of rape, involuntary deviate sexual intercourse ("IDSI"), and sexual assault. At CP-51-CR0006113-2019 (Ms. Anderson), Appellant was found guilty of rape, IDSI, and sexual assault.  At CP-51-CR0006114-2019 (Ms. Harden) the jury convicted Appellant of rape, sexual assault, and possessing an instrument of crime.

Pursuant to Pa.R.Crim.P. 582, "[o]ffenses charged in separate indictments or informations may be tried together if . . . the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(a)(1). We have stated that "where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." *Commonwealth v. Dozzo*, 991 A.2d 898, 903 (Pa.Super. 2010) (cleaned up). Further, "[t]he general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time[-]consuming duplication of evidence." *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa.Super. 2020) (*en banc*) (cleaned up).

However, under Rule 583, a court may nonetheless order separate trials "if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Pursuant to this rule, "the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Hobel*, 275 A.3d 1049, 1067 (Pa.Super. 2022) (cleaned up). Instead,

> [t]he prejudice of which Rule 583 speaks is . . . that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant

- 7 -

evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth v. Brown*, 186 A.3d 985, 993 (Pa.Super. 2018) (cleaned up).

Based upon a collective reading of Rules 582 and 583, our High Court has devised a three-part test relating to joinder of separate offenses at trial:

(1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Hobel*, *supra* at 1067 (cleaned up).

When considering whether offenses would be admissible in a separate trial for the other, we look to Rule 404(b), relating to bad act evidence, where we have observed as follows:

Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. Nevertheless:

Evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Dozzo*, *supra* at 902 (cleaned up). "When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (citation omitted).

As will be discussed in more detail below, the trial court found that the applicable Rule 404(b) exception supporting joinder was that involving a common plan or scheme. Hence, we consider the following principles relating to that exception:

> [E]vidence of other crimes or bad acts may be admitted where the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Sufficient commonality of factors between the incidents dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.

*Commonwealth v. Kurtz*, 294 A.3d 509, 532 (Pa.Super. 2023) (cleaned up). While considerate of this standard, we are nevertheless mindful that "[i]t is impossible for two incidents of sexual assault involving different victims to be identical in all respects." *Commonwealth v. Cosby*, 224 A.3d 372, 402 (Pa.Super. 2019), *rev'd on other grounds*, 252 A.3d 1092 (Pa. 2021). Rather, "what is essential is that the similarities are not confined to insignificant details

- 9 -

that would likely be common elements regardless of who had committed the crimes." *Id*. (cleaned up).

Having summarized the applicable law, we now turn to Appellant's arguments. He first asserts that the trial court erred in consolidating the three cases since evidence from each would not have been admissible in the other. More particularly, he contends that there were not enough similarities to show a common scheme or plan because the parallels were insufficient to demonstrate a signature, but rather were common to all rape cases involving a stranger. *See* Appellant's brief at 24-36. Appellant further avers that the Commonwealth did not prove applicability of any other exception enumerated under Rule 404(b), whether it be motive, intent, or absence of mistake. *Id*. at 37-39. Finally, he maintains that the probative value of the various incidents was outweighed by the potential for prejudice, and that the jury was encouraged to consider his propensity to commit crimes. *Id*. at 39-42.

In rejecting this claim, the trial court determined that evidence from each of the cases would be admissible in trial as to the others pursuant to a common scheme or plan, and thus concluded that it did not abuse its discretion in consolidating the three trials. *Id*. at 11, 14. Specifically, it stated:

> [Appellant's] common plan[,] scheme[,] and design was to predatorily select particularly vulnerable females who were strangers to him to satisfy his sexual deviancy. He had perceived each female as particularly easy to harm and less likely to be believed because of their connection to narcotics. All adult female complainants had been approached by Appellant as they were

walking in outside environments. In each case, Appellant lured and directed his chosen prey to isolated locations behind buildings. He terrorized his victims as he raped them. His brutal force increased with resistance. The circumstances of each sexual attack had evidenced Appellant's uniquely twisted mindset towards women. In each instance he displayed a pretense of consent. He apparently viewed his victims as unpaid prostitutes deserving of harm. The logical connections were unmistakable.

*Id*. at 14. The court also noted that Appellant's defense at trial was that the victims consented to the sexual encounters, and therefore attacked with vigor the credibility of the victims. As such, it noted the Commonwealth's need for the testimony as to all the encounters to refute Appellant's consent defense. *Id*. at 10. Finally, the court determined that each crime charged was readily separable by the jury based on the court's instructions for the jury to evaluate the evidence of each offense as it concerned each victim.[2] *Id*. at 11-12.

In the same vein, the Commonwealth asserts that the evidence of each crime would have been admissible in separate trials pursuant to the exception for common plan, scheme, and design. *See* Commonwealth's brief at 9. It identifies the commonalities of the incidents as such:

In each case, [Appellant] approached the victim or sought to prolong a random encounter. In each case the victim was alone. [Appellant] used some excuse to lure each victim away from safe or occupied areas. Each assault occurred outside in a secluded area. In each case [Appellant] used physical force to control the victim. In two of the cases [Appellant] employed a weapon, in the other he employed his fists. In each case [Appellant] had vaginal

---

[2] In its closing instructions, the trial court directed the jurors to consider each charge and incident separately, informing them that the charges were consolidated for a limited purpose, and that they were not permitted to regard evidence of the other allegations to infer that Appellant was a bad person or was inclined to commit crimes. *See* N.T. Trial, 10/29/21, at 148-49.

> sex with the victim against her will. He ejaculated in each victim. Each victim had some real or perceived vulnerability, including drug use on the part of two of the victims and third victim's stated unfamiliarity of the area.

*Id*. at 10 (cleaned up). The Commonwealth also notes that decisions from this Court have held that common plan or scheme evidence is admissible without proof of a signature if offered to show something other than identity of the accused. *Id*. at 10-11 (citing **Commonwealth v. Gray**, 296 A.3d 41, 51 (Pa.Super. 2023)). It further argues that Appellant's claim of prejudice arising from consolidation is meritless because the jury was capable of separating the crimes and episodes, which is evidenced by the fact that the jury acquitted Appellant of possession of an instrument of a crime with respect to the incident involving Ms. Anderson. *Id*. at 12.

Upon careful review of the certified record, we find no abuse of discretion with the court's decision to consolidate the three cases at trial. First, we conclude that "evidence of each of the offenses would be admissible in a separate trial for the other" under the common plan or scheme exception to Rule 404(b). **Hobel**, **supra** at 1067. The similarities between each of the three cases are striking, and the comparisons highlighted by both the trial court and the Commonwealth are supported by the record. After consideration of Appellant's pattern of assaults and the types of victims he chose, we find that the "[s]ufficient commonality of factors between the incidents dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected[,] they share a perpetrator." **Kurtz**, **supra** at 532.

Further, we determine that the evidence was "capable of separation by the jury so as to avoid danger of confusion," and thus satisfied Rule 582. **Hobel**, **supra** at 1067. Each of the three assaults occurred on different dates, in different locations, and involved different victims. Since the evidence was "distinguishable in time, space and the characters involved," there was no danger the jury was confused. **Dozzo**, **supra** at 903. As the Commonwealth highlights, the jury was demonstrably capable of separating the incidents because it acquitted Appellant of possession of an instrument of a crime as to one of the encounters but convicted him of that crime for another.

In the same vein, we do not find that Appellant was otherwise unduly prejudiced by the consolidation. The testimony was not of the character that "tended to convict the appellant only by showing his propensity to commit crimes." **Brown**, **supra** at 993. Rather, as indicated above, it clearly demonstrated Appellant's common plan and scheme. We see no reason to believe that Appellant was unduly prejudiced, especially in light of the court's instructions informing the jury to consider the testimony separately as to each victim. **See Commonwealth v. Vucich**, 194 A.3d 1103, 1113 (Pa.Super. 2018) ("It is well settled that the jury is presumed to follow the trial court's instructions."). We also note that in weighing the probative value of consolidation against the potential for prejudice against Appellant, standing alone, the testimony of the victims concerning lack of consent was uncorroborated. Accordingly, the Commonwealth had significant need for the testimony of each victim to dispute this contention, which in turn increased

the probative value of this collective evidence. **See Tyson**, **supra** at 362 (concluding that the trial court abused its discretion in prohibiting common scheme evidence when it was important to the Commonwealth's case to bolster a victim's testimony of lack of consent).

In sum, the trial court did not abuse its discretion in consolidating the three underlying cases, and Appellant is therefore not entitled to relief on this claim.

Appellant's remaining issue alleges court error when it denied his motion *in limine* concerning introduction of the sexual assault examination reports prepared for two of the victims. Although raised as one issue, this assertion contains two separate arguments with differing legal standards. Turning to the first, Appellant argues that introduction of the reports by the Commonwealth through Ms. Denman, and not the specific nurses who prepared them, violated his right to confrontation pursuant to the Sixth Amendment. **Id**. at 52-59.

This Court has stated that "[w]hether a defendant was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Tejada**, 161 A.3d 313, 317 (Pa.Super. 2017) (cleaned up). The clause provides thimpossat "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend VI. It prohibits "out-of-court testimonial statements by a witness unless the witness is unavailable

- 14 -

and the defendant had a prior opportunity for cross-examination." ***Commonwealth v. Yohe***, 79 A.3d 520, 531 (Pa. 2013). A report is testimonial "if its primary purpose is to establish or prove past events potentially relevant to a later criminal prosecution." ***Commonwealth v. Brown***, 185 A.3d 316, 319 n.3 (Pa. 2018).

The record confirms that Appellant had no opportunity to cross-examine the nurses about their reports during or before trial. Therefore, the salient question before us is whether the reports were testimonial.

Appellant asserts that these "forensic lab reports" were testimonial since their primary purpose was to establish events relevant to his prosecution. ***See*** Appellant's brief at 53 (discussing ***Brown***, ***supra***). He points to certain portions of the reports, particularly those relating to collection of evidence and chain of custody, as demonstrative of the fact that they were prepared to aid law enforcement. ***Id***. at 54-55. Appellant further bolsters this position by citing a statute mandating the creation of sexual assault evidence collection programs for hospitals, noting that its purpose is to "promote the health and safety of victims and to facilitate the prosecution of persons accused of sexual assaults." ***Id***. at 55-56 (quoting 35 P.S. § 10172.3(a)). He equates the reports in question to an autopsy report, which was deemed testimonial by our High Court in ***Brown***. ***Id***. at 57.

In its Rule 1925(a) opinion, the trial court determined that Appellant's right to confrontation was not violated because the reports in question were not testimonial. ***See*** Trial Court Opinion, 10/24/22, at 28. It noted that the

- 15 -

primary purpose for the creation of the reports was for medical treatment of the victims, not future litigation, as the treating nurses were not agents of the Commonwealth. *Id*. at 31. The court further distinguished the various cases cited by Appellant in his brief, highlighting that in other matters where a confrontation clause violation was found, it involved testimonial reports that proved a fact necessary for conviction, such as blood-alcohol levels in a case involving driving under the influence of alcohol.[3] *Id*. at 31-32.

We find no error of law with the court's conclusion that the records in question are not testimonial. It is clear that the primary purpose for completion of the reports was for the nurses at Episcopal Hospital to render medical assistance and aid to the victims of sexual assaults. Ms. Denman testified that when patients reported to that center, care was provided regardless of whether the patients sought to report an assault, and that the questions on the report were aimed at helping the nurses look for injuries, proscribe medications, and issue emergency contraception. *See* N.T. Trial, 10/28/21, at 115-19. Although there was a single page in the reports concerning chain of custody and discussing the evidence collected, that fact does not transmute the reports' primary purpose of obtaining information in

---

[3] For its part, the Commonwealth argues that the reports were medical records, not "forensic laboratory reports," as asserted by Appellant. *See* Commonwealth's brief at 16, 18. It further contends that the records were not testimonial, which is supported by the United States Supreme Court's affirmation that "statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id*. at 16-17 (citing *Ohio v. Clark*, 576 U.S. 237 (2015)).

order to provide effective medical care. As such, we cannot agree with Appellant that his right to confrontation was violated.

Appellant's second argument arising from this claim is that the sexual assault reports should not have been admitted at trial because they constituted inadmissible hearsay. *Id*. at 47-52. We note that, as with all evidentiary rulings, "when reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Sami*, 243 A.3d 991, 997 (Pa.Super. 2020) (citation omitted).

Our High Court has observed that "[t]o constitute hearsay, a statement first must be uttered out-of-court, and then it must be offered in court for the truth of the matter asserted in the statement." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 458 (Pa. 2021). Nonetheless, "[f]acially inadmissible hearsay still may be introduced as substantive evidence for the truth of the matter asserted if the statement falls under one of numerous exceptions to the general hearsay proscription." *Id*.

In its brief, the Commonwealth asserts that the reports fall under two exceptions to the rule against hearsay: statements made for medical treatment and records of a regularly conducted activity.[4] *See*

_____

[4] The trial court did not discuss admissibility of the sexual assault reports under the hearsay rules in its Rule 1925(a) opinion, and we note that it denied Appellant's motion *in limine* on the record at trial without significant discussion of its rationale. *See* N.T. Trial, 10/27/21, at 15. We bear in mind, however, "the well-established principle that an appellate court may affirm a valid judgment based upon any reason appearing in the record." *Commonwealth v. Elia*, 83 A.3d 254, 264 (Pa.Super. 2013) (citation omitted).

Commonwealth's brief at 18. Concerning statements made for a medical diagnosis, Rule 803 provides an exception to hearsay when the statement:

>    (A) is made for—and is reasonably pertinent to—medical treatment or diagnosis in contemplation of treatment; and
>
>    (B) describes medical history, past or present symptoms, or sensations, or the inception of general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

The following criteria must be satisfied for admission of records of a regularly conducted activity:

>    (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
>    (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
>    (C) making the record was a regular practice of that activity;
>
>    (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
>
>    (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Appellant contests that either of these exceptions is met. Particularly, he maintains that the portion of the reports concerning chain of custody and collection of evidence do not satisfy the exception concerning medical records because they are not "reasonably pertinent to medical treatment of

diagnoses." Appellant's reply brief at 23. Similarly, he contends that the business record exception is not satisfied since the reports are not trustworthy due to possible mistakes or bias by forensic nurses. *Id*. at 21. Appellant further argues that they are not reliable because they were prepared for litigation, and would not meet be deemed trustworthy by federal courts if analyzed under the similar F.R.E. 803(6). *Id*. at 21-22.

We agree with the Commonwealth that the reports in question fell within both exceptions, and accordingly the trial court did not abuse its discretion in permitting their admission. As analyzed above, the reports were reasonably pertinent to medical treatment and described the "inception of general character of the cause" of symptoms and sensations, thus satisfying the medical records exception. Pa.R.E. 803(4). Additionally, we find unsubstantiated by the record Appellant's bald contention that the reports do not satisfy the business records exception because they are unreliable. There was no evidence of abnormality in the collection of the swabs or chain of custody. Indeed, Appellant did not cross-examine Ms. Denman about collection of evidence or chain of custody in this case at all, let alone in an effort to identify any sort of untrustworthiness in the process. On the contrary, Ms. Denman, who herself is a sexual assault nurse examiner, testified on a general level as to the procedure of how, when, and why these reports are created, establishing that they are contemporaneous records of a regularly conducted activity at the hospital. *See* N.T. Trial, 10/28/21, at 115-19. Therefore, Appellant cannot succeed on this claim.

Since Appellant presents no issue of merit, we have no cause to overturn his judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/30/2023